UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA D. EMMONS, | No. 2:14-cv-0488-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") partially denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from plaintiff's alleged onset date of February 10, 2008, until March 1, 2012, the date on which plaintiff's disability was determined to have commenced. (ECF No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 16.) No optional reply brief was filed.

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 12.)

1

For the reasons discussed below, the court GRANTS IN PART plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and remands the action for further administrative proceedings.

I.  BACKGROUND

Plaintiff was born on October 22, 1957, has at least a high school education, is able to communicate in English, and previously worked primarily as a film/television scout and location manager.[2]  (Administrative Transcript ("AT") 24, 35-36, 52, 56.)  On August 31, 2010, plaintiff applied for DIB, alleging various physical and mental impairments, and indicating that her disability began on February 10, 2008.  (AT 15, 52, 56, 124, 141, 145.)  On March 11, 2011, the Commissioner determined that plaintiff was not disabled.  (AT 15, 60-64.)  Upon plaintiff's request for reconsideration, that determination was affirmed on July 27, 2011.  (AT 15, 68-74.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 19, 2012, and at which plaintiff, represented by an attorney, testified.  (AT 15, 31-51.)

In a partially favorable decision dated October 9, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from February 10, 2008, plaintiff's alleged disability onset date, until March 1, 2012, but that plaintiff became disabled on that date, and continued to be disabled through the date of the ALJ's decision.  (AT 15-26.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 11, 2013.  (AT 1-3.)  Thereafter, plaintiff filed this action in federal district court on February 14, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

////
////
////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician; and (2) whether the ALJ erred in failing to obtain vocational expert testimony at step five.[3]

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

   A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Plaintiff's brief raises these issues in reverse order.

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

status requirements of the Act through December 31, 2012. (AT 17.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since February 10, 2008, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that, since February 10, 2008, plaintiff had the following severe impairments: bilateral shoulder impingement with rotator cuff calcific tendinitis; degenerative disc disease of the cervical and lumbar spine; history of cholelithiasis and diverticulosis; bipolar disorder; and depressive disorder. (AT 18.) However, at step three, the ALJ determined that, since February 10, 2008, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 19.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") prior to March 1, 2012, as follows:

> After careful consideration of the entire record, the undersigned finds that prior to March 1, 2012, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: she could have lifted and/or carried 50 pounds occasionally and 25 pounds frequently; she could have frequently pushed and/or pulled with the bilateral upper extremities; she could have stood and/or walked for about 6 hours in an 8-hour workday, with normal breaks; she could have sat for 6 hours in an 8-hour workday, with normal breaks; she could have occasionally crawled; she could have never climbed ladders, ropes, or scaffolds; she could

---

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> have frequently reached above shoulder-level bilaterally; and she could have performed simple, repetitive tasks involving frequent interactions with supervisors, coworkers, and the public.

(AT 20.) Additionally, the ALJ determined that, as of March 1, 2012, plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that since March 1, 2012, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: she could lift and/or carry less than 10 pounds frequently and 10 pounds occasionally; she could stand and/or walk for 1 hour in an 8-hour workday; she could sit for less than 1 hour at a time, for a total of 4 hours in an 8-hour workday; she could occasionally perform postural activities, except that she is unable to balance, climb, and crawl; she could rarely reach, handle, push and/or pull; she must avoid concentrated exposure to heights, moving machinery, temperature extremes, humidity, and vibration; she could perform simple, repetitive tasks involving frequent interactions with supervisors, coworkers, and the public; and she would require more than three work absences per month to cope with the effects of pain, depression, and anxiety.

(AT 23.)

At step four, the ALJ found that, since February 10, 2008, plaintiff had been unable to perform any past relevant work. (AT 24.) Then, at step five, the ALJ determined, in reliance on the Grids, that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed prior to March 1, 2012. (AT 24-25.) However, the ALJ further determined that, beginning on March 1, 2012, given plaintiff's changed RFC and vocational profile, there were no jobs that exist in significant numbers in the national economy that plaintiff could perform. (AT 26.)

Accordingly, the ALJ concluded that plaintiff was not disabled prior to March 1, 2012, but that she became disabled on that date and remained disabled through the date of the ALJ's decision. (AT 26.)

B. <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

(1) *<u>Whether the ALJ improperly rejected the opinion of plaintiff's treating physician</u>*

In this case, plaintiff's treating primary care physician, Dr. Paul Seites, opined that plaintiff had been disabled since February of 2008 based on functional limitations related to, *inter*

5

*alia*, lumbar degenerative disc disease and chronic bilateral shoulder tendinitis and bursitis. (AT 1139-44.) As noted above, the ALJ ultimately agreed that plaintiff was disabled, but only as of March 1, 2012. On appeal, plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Seites' assessed disability onset date of February 2008. That argument has merit.

The ALJ primarily rejected Dr. Seites' opinion concerning the February 2008 onset date based on certain references in Dr. Seites' pre-March 2012 treatment notes to plaintiff's pain being "tolerable," "controlled," and/or "stable," which purportedly indicated that plaintiff's condition was not disabling prior to March 1, 2012. (AT 23.)[5] To be sure, terms like "tolerable," "controlled," or "stable" may well in some cases plausibly indicate that an impairment is well controlled and not disabling, but such terms must always be read and interpreted in context. Here, the court finds that the ALJ's interpretation of those terms as used in Dr. Seites' notes was not reasonable when viewed in context.

For example, the ALJ referenced a March 25, 2008 treatment record indicating that plaintiff's back pain was "controlled" with Vicodin. (AT 23, 223.) However, in that same record, Dr. Seites also noted that plaintiff had painful and reduced lumbosacral range of motion. (AT 223.) Furthermore, Dr. Seites observed that plaintiff's right shoulder pain had increased to 8/10 and was aggravated by repetitive movement, raising the arm above the head, pushing, pulling, or reaching, and was not even alleviated with Vicodin. (Id.) He found tenderness over the greater tuberosity, biceps tendon, and AC joint with limited active and passive range of motion. (Id.) Consequently, a steroid injection was performed. (AT 223, 227.)

The ALJ also cited an April 9, 2009 treatment record indicating that plaintiff's shoulder pain was "stable." (AT 23, 453.) But during that visit, which addressed primarily plaintiff's mental impairments, Dr. Seites simultaneously noted that plaintiff had "ongoing shoulder pain

---

[5] The ALJ also noted that "Dr. Seites described the claimant's symptoms of nausea, anorexia, and difficulties with speech yet he stated that there was an extensive medical workup negative for any clear organic causes." (AT 23.) However, Dr. Seites did not indicate that nausea, anorexia, or speech difficulties rendered plaintiff disabled. Dr. Seites' assessed functional limitations were based primarily on plaintiff's back and shoulder impairments.

and has long history of shoulder tendonitis. Pain worse in am and improves as she becomes mobile and with Relafen." (AT 452.) Moreover, not long thereafter, on June 25, 2009, Dr. Seites performed a more detailed examination of plaintiff's shoulders with findings of tenderness over the greater tuberosity, biceps tendon, and AC joint; limited active and passive range of motion; and positive impingement signs. (AT 429.) He noted that plaintiff's shoulder pain, rated at a level of 7/10, was aggravated by all activities above shoulder level, reaching behind her back, or lifting/carrying even light objects, and that it had not responded to physical therapy or steroid injections. (Id.) Dr. Seites further documented plaintiff's painful and reduced lumbosacral range of motion and antalgic gait, with a pain level of 8/10. (Id.) He also reviewed MRI exams from June 17, 2009, which showed an L5-S1 broad-based disc protrusion approaching the left greater than right S1 nerve root in plaintiff's lumbar spine, as well as tears and calcific tendinopathy in plaintiff's shoulders. (AT 429, 431.)

The ALJ further referenced a July 26, 2010 treatment record where Dr. Seites noted that plaintiff's shoulder pain was chronic but "tolerable off narcotic analgesics." (AT 23, 323.) However, that isolated statement alone, without further evidentiary support, does not constitute substantial evidence that plaintiff was capable of performing a reduced range of medium work prior to March 1, 2012, as found by the ALJ.

Therefore, when placed in context, the treatment notes cited by the ALJ do not in themselves contradict Dr. Seites' opinion concerning plaintiff's disability onset date. Additionally, the court notes that the ALJ failed to adequately explain why he assessed a disability onset date of March 1, 2012. The ALJ reasoned that "[a]s of March 2012, the claimant's medication required adjusting, as her shoulder pain was no longer deemed stable (Ex. 15F/13)." (AT 24.) At the referenced March 22, 2012 treatment visit, Dr. Seites prescribed plaintiff 10mg/325mg of Endocet with instructions to take one tablet/capsule every four hours as needed for pain. (AT 982.) However, the record indicates that plaintiff had already been prescribed that same medication and dosage prior to March 2012. (See, e.g., AT 1002.)

In sum, the court finds that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Seites' opinion concerning plaintiff's disability onset date. Nevertheless, the court

declines to remand the action for an award of benefits, because the record contains conflicting evidence as to whether plaintiff was in fact disabled as of February 10, 2008. For example, during an October 28, 2010 examination performed by a treating neurologist, plaintiff was assessed as having a normal gait, normal motor tone, normal range of joint motion, and normal limb coordination. (AT 369, 371, 373.) Also, during a January 17, 2011 psychiatric evaluation, plaintiff told the consultative examiner that she vacuums, cooks, does laundry, watches television, does on-line banking, talks on the phone, drives, goes grocery shopping, goes out to dinner with her mother occasionally, goes to church occasionally, and stays with her mother a few days a week. (AT 479, 484.) The consultative examiner opined that plaintiff's attitude toward seeking employment was poor. (AT 485.) Furthermore, the state agency physicians on December 10, 2010, and July 14, 2011, respectively, concluded that plaintiff was capable of performing a reduced range of medium work. (AT 472-76, 926-31.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

In light of such conflicting evidence and ambiguities, and the need for the ALJ to resolve essential factual issues concerning plaintiff's functional capacity prior to March 1, 2012, the court concludes that a remand for further administrative proceedings is more appropriate. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014) ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate.").

On remand, the ALJ shall carefully weigh and consider the medical and other record evidence prior to March 1, 2012, and if deemed necessary, shall obtain supplemental medical expert testimony regarding plaintiff's functional limitations prior to March 1, 2012. The ALJ is also free to develop the record in any other ways deemed appropriate, such as by obtaining vocational expert testimony.

////

Importantly, the court expresses no opinion regarding how the record evidence should ultimately be weighed on remand. Indeed, the ALJ may choose to: (1) accept Dr. Seites' opinion that plaintiff's disability commenced in February 2008; (2) reaffirm his prior conclusion that plaintiff's disability commenced on March 1, 2012; or (3) assess a different disability onset date altogether. However, any such findings must be made in accordance with the applicable legal standards, supported by substantial evidence, and set forth in sufficient detail to allow meaningful appellate review.

(2) *Whether the ALJ erred in failing to obtain vocational expert testimony at step five*

In light of the court's conclusion that the case should be remanded for further consideration of the record evidence prior to March 1, 2012, the court declines to address the issue of vocational expert testimony at this juncture. On remand, the ALJ will have a further opportunity to consider whether any functional limitations assessed relevant to that period require vocational expert testimony under applicable law.

V. CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED.

3. The case is remanded for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

5. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: May 18, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE